JS 44   (Rev. 12/07)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

**United States of America and Commonwealth of Pennsylvania**

## DEFENDANTS

**Bristol Township**

**(b)** County of Residence of First Listed Plaintiff    **Philadelphia**
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant    **Bucks**
(IN U.S. PLAINTIFF CASES ONLY)

NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
**Paul W. Kaufman, AUSA, U.S. Attorney's Office, 615 Chestnut Street, Suite 1250, Philadelphia, PA 19106
(215) 861-8579**

Attorneys (If Known)

## II. BASIS OF JURISDICTION   (Place an "X" in One Box Only)

- ☒ 1  U.S. Government Plaintiff
- ☐ 2  U.S. Government Defendant
- ☐ 3  Federal Question (U.S. Government Not a Party)
- ☐ 4  Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT   (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 690 Other | **LABOR** | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | | ☐ 710 Fair Labor Standards Act | ☐ 810 Selective Service |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | | ☐ 720 Labor/Mgmt. Relations | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 196 Franchise | | | ☐ 740 Railway Labor Act | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 892 Economic Stabilization Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | | ☒ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 894 Energy Allocation Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | **IMMIGRATION** | ☐ 895 Freedom of Information Act |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | ☐ 463 Habeas Corpus - Alien Detainee | ☐ 950 Constitutionality of State Statutes |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | ☐ 465 Other Immigration Actions | |

Additional torts: **PERSONAL INJURY** ☐ 362 Personal Injury - Med. Malpractice; ☐ 365 Personal Injury - Product Liability; ☐ 368 Asbestos Personal Injury Product Liability. **PERSONAL PROPERTY** ☐ 370 Other Fraud; ☐ 371 Truth in Lending; ☐ 380 Other Personal Property Damage; ☐ 385 Property Damage Product Liability.

**SOCIAL SECURITY**: ☐ 861 HIA (1395ff); ☐ 862 Black Lung (923); ☐ 863 DIWC/DIWW (405(g)); ☐ 864 SSID Title XVI; ☐ 865 RSI (405(g)).

**FEDERAL TAX SUITS**: ☐ 870 Taxes (U.S. Plaintiff or Defendant); ☐ 871 IRS—Third Party 26 USC 7609.

## V. ORIGIN   (Place an "X" in One Box Only)

- ☒ 1  Original Proceeding
- ☐ 2  Removed from State Court
- ☐ 3  Remanded from Appellate Court
- ☐ 4  Reinstated or Reopened
- ☐ 5  Transferred from another district (specify)
- ☐ 6  Multidistrict Litigation
- ☐ 7  Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
**33 U.S.C. § 1319(b) and (d)**

Brief description of cause:
**Clean Water Act**

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:  ☐ Yes  ☐ No

## VIII. RELATED CASE(S) IF ANY

(See instructions):   JUDGE _____   DOCKET NUMBER _____

DATE   **9/27/2010**

SIGNATURE OF ATTORNEY OF RECORD   _/s/_   **Paul W. Kaufman, AUSA**

FOR OFFICE USE ONLY

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

### CASE MANAGEMENT TRACK DESIGNATION FORM

| United States of America and Commonwealth of Pennsylvania | : | CIVIL ACTION |
|---|---|---|
| v. | : | |
| Bristol Township | : | NO. |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

### SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.                    ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health and Human Services denying plaintiff Social Security Benefits.                    ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.    ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from exposure to asbestos.                    ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are commonly referred to as complex and that need special or intense management by the court. (See reverse side of this form for a detailed explanation of special management cases.)                    ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks.             (✓)

| | | |
|---|---|---|
| 9/27/2010 | [signature] | [signature] |
| **Date** | **Attorney-at-law** Paul W. Kaufman | **Attorney for Plaintiffs** |
| ( 215) 861-8579 | (215) 861-8618 | Paul.kaufman2@usdoj.gov |
| **Telephone** | **FAX Number** | **E-Mail Address** |

**(Civ. 660) 10/02**

**Civil Justice Expense and Delay Reduction Plan**
**Section 1:03 - Assignment to a Management Track**

(a)     The clerk of court will assign cases to tracks (a) through (d) based on the initial pleading.

(b)     In all cases not appropriate for assignment by the clerk of court to tracks (a) through (d), the plaintiff shall submit to the clerk of court and serve with the complaint on all defendants a case management track designation form specifying that the plaintiff believes the case requires Standard Management or Special Management.  In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a case management track designation form specifying the track to which that defendant believes the case should be assigned.

(c)     The court may, on its own initiative or upon the request of any party, change the track assignment of any case at any time.

(d)     Nothing in this Plan is intended to abrogate or limit a judicial officer's authority in any case pending before that judicial officer, to direct pretrial and trial proceedings that are more stringent than those of the Plan and that are designed to accomplish cost and delay reduction.

(e)     Nothing in this Plan is intended to supersede Local Civil Rules 40.1 and 72.1, or the procedure for random assignment of Habeas Corpus and Social Security cases referred to magistrate judges of the court.

**SPECIAL MANAGEMENT CASE ASSIGNMENTS**
**(See §1.02 (e) Management Track Definitions of the**
**Civil Justice Expense and Delay Reduction Plan)**

Special Management cases will usually include that class of cases commonly referred to as "complex litigation" as that term has been used in the Manuals for Complex Litigation.  The first manual was prepared in 1969 and the Manual for Complex Litigation Second, MCL 2d was prepared in 1985.  This term is intended to include cases that present unusual problems and require extraordinary treatment.  See §0.1 of the first manual.  Cases may require special or intense management by the court due to one or more of the following factors:  (1) large number of parties; (2) large number of claims or defenses; (3) complex factual issues; (4) large volume of evidence; (5) problems locating or preserving evidence; (6) extensive discovery; (7) exceptionally long time needed to prepare for disposition; (8) decision needed within an exceptionally short time; and (9) need to decide preliminary issues before final disposition.  It may include two or more related cases. Complex litigation typically includes such cases as antitrust cases; cases involving a large number of parties or an unincorporated association of large membership; cases involving requests for injunctive relief affecting the operation of large business entities; patent cases; copyright and trademark cases; common disaster cases such as those arising from aircraft crashes or marine disasters; actions brought by individual stockholders; stockholder's derivative and stockholder's representative actions; class actions or potential class actions; and other civil (and criminal) cases involving unusual multiplicity or complexity of factual issues.  See §0.22 of the first Manual for Complex Litigation and Manual for Complex Litigation Second, Chapter 33.

**UNITED STATES DISTRICT COURT**

FOR THE EASTERN DISTRICT OF PENNSYLVANIA — DESIGNATION FORM to be used by counsel to indicate the category of the case for the purpose of assignment to appropriate calendar.

Address of Plaintiff: **USA and Commonwealth of Pennsylvania, 615 Chestnut Street, Suite 1250, Phila., PA 19106**

Address of Defendant: **Bristol Township, Business Offices at 2501 Bath Road, Bristol, PA 19007**

Place of Accident, Incident or Transaction: **Wastewater treatment plant, Croydon, Bristol Township, Bucks County, Pennsylvania**
*(Use Reverse Side For Additional Space)*

Does this civil action involve a nongovernmental corporate party with any parent corporation and any publicly held corporation owning 10% or more of its stock?

(Attach two copies of the Disclosure Statement Form in accordance with Fed.R.Civ.P. 7.1(a))   Yes☐   No☑

Does this case involve multidistrict litigation possibilities?   Yes☐   No☑

*RELATED CASE, IF ANY:*

Case Number: _____   Judge _____   Date Terminated: _____

Civil cases are deemed related when yes is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?
   Yes☐   No☑

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?
   Yes☐   No☑

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action in this court?
   Yes☐   No☑

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?
   Yes☐   No☑

CIVIL: (Place ✔ in ONE CATEGORY ONLY)

A. *Federal Question Cases:*

1. ☐ Indemnity Contract, Marine Contract, and All Other Contracts
2. ☐ FELA
3. ☐ Jones Act-Personal Injury
4. ☐ Antitrust
5. ☐ Patent
6. ☐ Labor-Management Relations
7. ☐ Civil Rights
8. ☐ Habeas Corpus
9. ☐ Securities Act(s) Cases
10. ☐ Social Security Review Cases
11. ☑ All other Federal Question Cases
    (Please specify) **Clean Water Act**

B. *Diversity Jurisdiction Cases:*

1. ☐ Insurance Contract and Other Contracts
2. ☐ Airplane Personal Injury
3. ☐ Assault, Defamation
4. ☐ Marine Personal Injury
5. ☐ Motor Vehicle Personal Injury
6. ☐ Other Personal Injury (Please specify)
7. ☐ Products Liability
8. ☐ Products Liability — Asbestos
9. ☐ All other Diversity Cases
   (Please specify)

**ARBITRATION CERTIFICATION**
*(Check Appropriate Category)*

I, **Paul W. Kaufman**, counsel of record do hereby certify:

☒ Pursuant to Local Civil Rule 53.2, Section 3(c)(2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs;

☒ Relief other than monetary damages is sought.

DATE: 9/27/2010 _____   _____   92805

Attorney-at-Law   Paul W. Kaufman, AUSA          Attorney I.D.#

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

I certify that, to my knowledge, the within case is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: 9/27/2010 _____   _____   92805

Attorney-at-Law   Paul W. Kaufman, AUSA          Attorney I.D.#

CIV. 609 (6/08)

# UNITED STATES DISTRICT COURT

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA — DESIGNATION FORM** to be used by counsel to indicate the category of the case for the purpose of assignment to appropriate calendar.

Address of Plaintiff:   **USA and Commonwealth of Pennsylvania, 615 Chestnut Street, Suite 1250, Phila., PA 19106**

Address of Defendant:   **Bristol Township, Business Offices at 2501 Bath Road, Bristol, PA 19007**

Place of Accident, Incident or Transaction:   **Wastewater treatment plant, Croydon, Bristol Township, Bucks County, Pennsylvania**
*(Use Reverse Side For Additional Space)*

Does this civil action involve a nongovernmental corporate party with any parent corporation and any publicly held corporation owning 10% or more of its stock?
(Attach two copies of the Disclosure Statement Form in accordance with Fed.R.Civ.P. 7.1(a))     Yes☐   No☑

Does this case involve multidistrict litigation possibilities?     Yes☐   No☑
*RELATED CASE, IF ANY:*
Case Number: _____   Judge _____   Date Terminated: _____

Civil cases are deemed related when yes is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?
Yes☐   No☑

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?
Yes☐   No☑

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action in this court?
Yes☐   No☑

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?
Yes☐   No☑

CIVIL: (Place ✔ in ONE CATEGORY ONLY)

A. *Federal Question Cases*:
1. ☐ Indemnity Contract, Marine Contract, and All Other Contracts
2. ☐ FELA
3. ☐ Jones Act-Personal Injury
4. ☐ Antitrust
5. ☐ Patent
6. ☐ Labor-Management Relations
7. ☐ Civil Rights
8. ☐ Habeas Corpus
9. ☐ Securities Act(s) Cases
10. ☐ Social Security Review Cases
11. ☑ All other Federal Question Cases
(Please specify) **Clean Water Act**

B. *Diversity Jurisdiction Cases*:
1. ☐ Insurance Contract and Other Contracts
2. ☐ Airplane Personal Injury
3. ☐ Assault, Defamation
4. ☐ Marine Personal Injury
5. ☐ Motor Vehicle Personal Injury
6. ☐ Other Personal Injury (Please specify)
7. ☐ Products Liability
8. ☐ Products Liability — Asbestos
9. ☐ All other Diversity Cases
(Please specify)

## ARBITRATION CERTIFICATION
*(Check Appropriate Category)*

I, **Paul W. Kaufman**, counsel of record do hereby certify:
☒ Pursuant to Local Civil Rule 53.2, Section 3(c)(2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs;
☒ Relief other than monetary damages is sought.

DATE: **9/27/2010**        _____        **92805**
              Attorney-at-Law   **Paul W. Kaufman, AUSA**              Attorney I.D.#

**NOTE:** A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

I certify that, to my knowledge, the within case is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: **9/27/2010**        _____        **92805**
              Attorney-at-Law   **Paul W. Kaufman, AUSA**              Attorney I.D.#

CIV. 609 (6/08)

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA and COMMONWEALTH OF PENNSYLVANIA,<br><br>Plaintiffs,<br><br>v.<br><br>BRISTOL TOWNSHIP,<br><br>Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) ) | Civil Action No. |

## COMPLAINT

Plaintiffs the United States of America, by the authority of the Attorney General and at the request of the Administrator of the United States Environmental Protection Agency ("EPA"), and the Commonwealth of Pennsylvania, Department of Environmental Protection ("PADEP"), allege as follows:

## INTRODUCTION

1.     This matter is a civil action brought pursuant to Section 309(b) and (d) of the Clean Water Act, 33 U.S.C. § 1319(b) and (d), for permanent injunctive relief and the assessment of civil penalties against Bristol Township ("Bristol"), including supplemental state claims brought pursuant to the Pennsylvania Clean Streams Law, Act of June 22, 1937, P.L. 1987, *as amended*, 35 P.S.§§ 691.1-691.1001 ("Clean Streams Law"); Section 1917-A of the Administrative Code of 1929, P.L. 177, *as amended*, 71

P.S. § 510-17 ("Administrative Code"), and the rules and regulations promulgated thereunder ("Supplemental State Claims") .

2.     PADEP is the agency within the Commonwealth of Pennsylvania (the "Commonwealth") with the duty and the authority to administer and enforce, *inter alia*, the Clean Streams Law, Section 1917-A of the Administrative Code, and the rules and regulations promulgated thereunder, and which has been delegated authority to administer the National Pollutant Discharge Elimination System ("NPDES") permit program under Section 402 of the Federal Water Pollution Control Act, 33 U.S.C. § 1342.

3.     PADEP is a "state water pollution control agency" and "person" as defined in Section 502(1) and (5) of the Clean Water Act, 33 U.S.C. § 1362(1) and (5). PADEP has authority to join in this Complaint pursuant to Section 601 and 605 of the Clean Streams Law, 35 P.S. §§ 691.601 and 691.605.

4.     The Commonwealth is a party to this action in accordance with Section 309(e) of the Clean Water Act, 33 U.S.C. § 1319.

5.     Under Section 402 of the Clean Water Act, 33 U.S.C. § 1342, and Section 202 of the Pennsylvania Clean Streams Law, 35 P.S. § 691.202, on January 10, 2002, the Department issued NPDES Permit No. PA0026450 to Bristol Township Authority, which NPDES permit authorized the discharge of treated effluent into Zone 2 of the Delaware River and set effluent limits and monitoring requirements for the discharge. This NPDES permit was renewed and transferred to Bristol Township on October 11, 2007 ("Permit").

2

6.      Bristol has discharged pollutants, including raw sewage, from its sanitary sewer system into navigable waters of the United States in violation of Section 301 of the Clean Water Act, 33 U.S.C. § 1311.

7.      Bristol failed to comply with limitations and conditions in its Permit, including effluent limit violations, reporting violations, failure to maintain facilities and violation of operation and maintenance provisions, thereby also violating Sections 201, 202 and 401 of the Clean Streams Law, 35 P.S. §§ 691.201-691.202, 691.401 and 25 Pa. Code §92.51(4), as described in greater detail below.

8.      Bristol experienced unpermitted discharges resulting from SSOs on December 30, 2006, April 17-18, 2007, July 20, 2007, March 3, 2008, November 30, 2008, December 28-30, 2008, July 13, 2009, March 16, 2010, May 19, 2010, June 21, 2010 and August 9, 2010, thereby violating Sections 201, 202 and 401 of the Clean Streams Law, 35 P.S. §§ 691.201-691.202, 691.401.

## JURISDICTION AND VENUE

9.      This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §§ 1331, 1345, and 1355, and Section 309(b) of the Clean Water Act, 33 U.S.C. § 1319(b).

10.     Because the Supplemental State Claims are so related to the federal claims pursuant to the Clean Water Act as to form part of the same case or controversy, this Court has supplemental jurisdiction over PADEP's claims alleged herein pursuant to 28 U.S.C. § 1367(a).

3

11.     Because Bristol is located in this district, and because the causes of action alleged herein arose in this district, venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) and 1395(a).

## THE DEFENDANT

12.     Defendant Bristol is a Pennsylvania municipality with business offices at 2501 Bath Road, Bristol, Pennsylvania 19007.

13.     Bristol is a "person" within the meaning of Section 502(5) of the Clean Water Act, 33 U.S.C. § 1362(5) and Section 1 of the Clean Streams Law, 34 P.S. § 691.1, and "a municipality" within the meaning of Section 502(4) of the Clean Water Act, 33 U.S.C. § 1362(4) and Section 1 of the Clean Streams Law, 35 P.S. § 691.1.

14.     Bristol has the power to sue and to be sued.  53 Pa. C.S. § 5607(d)(2).

15.     Bristol owns and operates a publicly-owned treatment works ("POTW"). As part of the POTW, Bristol owns and operates a wastewater treatment plant located in Croydon, Bristol Township, Bucks County, Pennsylvania ("WWTP").   Bristol's POTW also includes a collection system that consists of approximately 60 miles of sewer lines and 18 pumping stations ("Collection System").

16.     At various times relevant to the Complaint, the POTW was owned by the Bristol Township Authority, an entity that was established on February 5, 1952 but has since ceased to exist.  Since September 1995, Bristol has operated and overseen the POTW.

## FEDERAL STATUTORY BACKGROUND

17.     Section 301(a) of the Clean Water Act, 33 U.S.C. § 1311(a), prohibits the discharge of any pollutant into the waters of the United States by any person except, *inter*

*alia*, in accordance with that section of the Clean Water Act and an NPDES permit issued pursuant to Section 402 of the Clean Water Act, 33 U.S.C. § 1342.

18.   Under Section 402(a) of the Clean Water Act, 33 U.S.C. § 1342(a), the Administrator of EPA may issue NPDES permits to authorize the discharge of pollutants into waters of the United States, subject to the conditions and limitations set forth in such permits.

19.   Section 402(b) of the Clean Water Act, 33 U.S.C. § 1342(b), provides that EPA may approve a state NPDES permitting program within its jurisdiction.  On or about July 1, 1978, the Administrator of EPA authorized the Commonwealth, through PADEP, to issue NPDES permits in Pennsylvania, and the Commonwealth does so in accordance with its Clean Streams Law, 35 P.S. § 691.1 *et seq*.

20.   Sections 308 and 402(a)(2) of the Clean Water Act, 33 U.S.C. §§1318 and 1342(a)(2), provide that an NPDES permit may also require, among other things, data and information collection and reporting, the establishment and maintenance of monitoring equipment, the sampling of effluent, and the reporting on a regular basis to the permit-issuing authority regarding the permittee's discharge of pollutants.

21.   Pursuant to Section 402(i) of the Clean Water Act, 33 U.S.C. § 1342(i), EPA retains authority to take enforcement action under Section 309 of the Clean Water Act, 33 U.S.C. § 1319.

22.   Section 309(b) of the Clean Water Act, 33 U.S.C. § 1319(b), authorizes the Administrator of EPA to commence a civil action to obtain appropriate relief, including a permanent or temporary injunction, when any person violates Section 301 of

the Clean Water Act, 33 U.S.C. § 1311, or violates any permit condition or limitation in a permit issued under Section 402 of the Clean Water Act, 33 U.S.C. § 1342.

23.     As signatory to this Complaint, PADEP has actual notice of the commencement of this action, as required by Section 309(b) of the Clean Water Act, 33 U.S.C. § 1319(b).

24.     Section 309(d) of the Clean Water Act, 33 U.S.C. § 1319(d), provides that any person who violates Section 301 of the Clean Water Act, 33 U.S.C. § 1311, or violates any permit condition or limitation in a permit issued pursuant to Section 402 of the Clean Water Act, 33 U.S.C. § 1342, shall be subject to a civil penalty of up to $25,000 per day for each violation occurring prior to January 31, 1997.

25.     Pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990 (28 U.S.C. § 2461 note; Pub. L. 101-410, enacted October 5, 1990; 104 Stat. 890), as amended by the Debt Collection Improvement Act of 1996 (31 U.S.C. § 3701 note; Pub. L. 104-134, enacted April 26, 1996; 110 Stat. 1321), EPA may seek civil penalties of up to $27,500 per day for each violation occurring on or after January 31, 1997, and up to $32,500 per day per violation on or after March 15, 2004, and up to $37,500 per day per violation on or after January 12, 2009.  See 61 Fed. Reg. 69,364 (Dec. 31, 1996); 69 Fed. Reg. 7,121 (Feb. 13, 2004); 73 Fed. Reg. 75340, 75345 (Dec. 11, 2008).

26.     The United States Department of Justice has authority to bring this action on behalf of EPA pursuant to Section 506 of the Clean Water Act, 33 U.S.C. § 1366.

## PENNSYLVANIA STATUTORY BACKGROUND

27.     Sections 201 and 202 of the Clean Streams Law, 35 P.S. §§ 691.201 and 691.202, prohibit the discharge of sewage or other polluting substances into waters of the

6

Commonwealth, except as provided under the Clean Streams Law and the Rules and Regulations of the Department.

28.     Section 401 of the Clean Streams Law, 35 P.S. § 691.401, prohibits the discharge of any substance into waters of the Commonwealth resulting in pollution.

29.     Title 25, Section 92.5 of the Rules and Regulations of the Department, 25 Pa. Code §92.5, provides that an NPDES permit satisfies the permit requirement of Section 202 of the Clean Streams Law, 35 P.S. § 691.202.

30.     Title 25, Section 92.51(4) of the Rules and Regulations of the Department, 25 Pa. Code §92.51(4), provides that "the permittee shall maintain in good working order and operate as efficiently as possible, facilities or systems of control installed by the permittee to achieve compliance with the terms and conditions of the permit."

31.     Section 601 of the Clean Streams Law, 35 P.S. § 691.601, provides in pertinent part:

> (a) Any activity or condition declared by this act to be a nuisance or which is otherwise in violation of this act, shall be abatable in the manner provided by law or equity for the abatement of public nuisances.

32.     Section 611 of the Pennsylvania Clean Streams Law, 35 P.S. § 691.611, provides in pertinent part:

> It shall be unlawful to fail to comply with any rule or regulation of the department or to fail to comply with any order or permit or license of the department, to violate any of the provisions of this act or rules and regulations adopted hereunder, or any order or permit or license of the department, to cause air or water pollution, or to hinder, obstruct, prevent or interfere with the department or its personnel in the performance of any duty hereunder or to violate the provisions of 18 Pa. C.S. Section 4903 (relating

7

to false swearing) of 4904 (relating to unsworn falsifications to authorities). Any person or municipality engaging in such conduct shall be subject to the provisions of Sections 601, 602 and 605.

33.   Section 605 of the Pennsylvania Clean Streams Law, 35 P.S. § 691.601,

provides in pertinent part:

> In addition to proceeding under any other remedy available at law or equity for a violation of a provision of this act, rule, regulations, order of the department, or a condition of any permit issued pursuant to this act, the department, after hearing, may assess a civil penalty upon a person or municipality for such violation. Such a penalty may be assessed whether or not the violation was willful. The civil penalty so assessed shall not exceed ten thousand dollars ($10,000) per day for each violation.

34.   Section 1917-A of the Administrative Code, 71 P.S. § 510-17, provides, in

pertinent part, that PADEP shall have the power and its duty shall be:

> (1) To protect the people of this Commonwealth from unsanitary conditions and other nuisances, including any condition which is declared to be a nuisance by any law administered by the department;
> (2) To cause examination to be made of nuisances, or questions affecting the security of life and health, in any locality, and, for that purpose, without fee or hinderance, to enter, examine and survey all grounds, vehicles, apartments, buildings, and places, within the Commonwealth, and all persons, authorized by the department to enter, examine and survey such grounds, vehicles, apartments, buildings and places, shall have the powers and authority conferred by law upon constables; [and]
> (3) To order such nuisances including those detrimental to the public health to be abated and removed;

## GENERAL ALLEGATIONS

35.   At all times relevant herein, Bristol has owned, operated, and maintained

the POTW, including the WWTP and Collection System. Bristol's WWTP and

8

Collection System are "treatment works" within the meaning of Section 212(2) of the Clean Water Act, 33 U.S.C. § 1292(2).

36.     Bristol's POTW includes point sources within the meaning of Section 502(14) of the Clean Water Act, 33 U.S.C. § 1362(14).

37.     The WWTP receives wastewater from a portion of Bristol's residences and businesses.

38.     Pursuant to Section 402(a) of the Clean Water Act, 33 U.S.C. § 1342(a), and Section 202 of the Pennsylvania Clean Streams Law, 35 P.S. § 691.202, PADEP issued Bristol the following NPDES permits:

> PA Permit 0026450, issued on January 10, 2002 and effective on Feb. 1, 2002.  This NPDES Permit was reissued on May 17, 2004 and effective on June 1, 2004.  Both the Permit and Amendment expired on January 9, 2007.  The renewal application was received on January 7, 2006 and the permit became effective on November 1, 2007.

39.     Sewage, commercial and industrial waste, and their constituents are "pollutants" within the meaning of Section 502(6) of the Clean Water Act, 33 U.S.C. § 1362(6), and are defined as "pollution" by Section 1 of the Clean Streams Law, 35 P.S. § 691.1.

40.     The Delaware River is a "navigable water" within the meaning of Section 502(7) of the Clean Water Act, 33 U.S.C. § 1362(7), and a "water of the Commonwealth" within the meaning of Section 1 of the Clean Streams Law, 35 P.S. § 691.1.

41.     The Neshaminy Creek is a "water of the Commonwealth" within the meaning of Section 1 of the Clean Streams Law, 35 P.S. § 691.1 and is a relatively

permanent water ("RPW") that flows into the Delaware River and is, therefore, also a "water of the United States."

42.     Bristol has "discharged" within the meaning of Section 502 (12) of the Clean Water Act, 33 U.S.C. §§ 1362(12).

43.     Bristol's Permit contains limits on the concentrations and loadings of certain pollutants likely to be present in the treated effluent from the WWTP, including but not limited to total suspended solids, ammonia nitrogen, carbonaceous biochemical oxygen demand, fecal coliform, and total residual chlorine.  Bristol is required to test its effluent for any parameter set forth in its Permit and to report the results monthly to PADEP in Discharge Monitoring Reports ("DMRs").

### FEDERAL LAW CLAIMS
### CLAIM ONE
### *(Unpermitted Discharge)*

44.     Paragraphs 1 through 43 are re-alleged and incorporated by reference.

45.     At various times relevant to this Complaint, Bristol experienced discharges of pollutants from point sources within its POTW that were not permitted or otherwise authorized by the Clean Water Act, including leaks, overflows, defects and backups.

46.     One such discharge occurred on or about December 30, 2006 when a plug Bristol had installed failed and two of its pumps became airbound.  These pumps failed to continue to move sufficient liquid.  These failures resulted in an unpermitted discharge into the Neshaminy Creek when the liquid entered the Neshaminy Creek via a headwall approximately one mile from the confluence of the Neshaminy and the Delaware River.

47.     The unauthorized discharge constitutes a violation of Section 301 of the Clean Water Act, 33 U.S.C. § 1311.

48.     Sections 309(b) and (d) of the Clean Water Act, 33 U.S.C. §§ 1319, provide that any person who violates Section 301 of the Clean Water Act shall be subject to injunctive relief and a civil penalty.  The statutory maximum civil penalty amounts that may be awarded per day for each violation are set forth in Paragraphs 24 and 25 above.

49.     Unless enjoined by the Court, Bristol will continue to violate Section 301 of the Clean Water Act, 33 U.S.C. § 1311.

## CLAIM TWO
### *(Failure to Comply with Operation and Maintenance Provisions in the Permit)*

50.     Paragraphs 1 through 49 are re-alleged and incorporated by reference.

51.     Part B of the Permit, Management Requirements, Facilities Operation, states: "[t]he permittee shall, at all times, maintain in good working order and properly operate and maintain all facilities and systems which are installed or used by the permittee to achieve compliance with the terms and conditions of this permit.  Proper operation and maintenance includes, but is not limited to, adequate laboratory controls including appropriate quality assurance procedures.  This provision also includes the operation of backup or auxiliary facilities or similar systems, which are installed by the permittee, only when necessary to achieve compliance with the terms and conditions of this permit."

52.     At various times relevant to this Complaint, Bristol has violated operation and maintenance provisions in its Permit, including by failing to install tools for effluent

11

and flow monitoring sufficient to allow Bristol to operate the POTW in accordance with the Permit and/or to prevent SSOs.

53.     On or about April 17, 2007, a storm overloaded the Delaware Avenue pump station, which is part of the Collection System, and backed up the sewer main.

54.     This backup resulted in a wet weather overflow that began on the morning of April 17, 2007 and lasted into April 18, 2007.  During this overflow, approximately fifty (50) gallons per minute of sewage flowed onto a driveway and roadway at 810 Sixth Avenue, Croydon, PA.

55.     The same wet weather event caused a second overflow at 812 Sixth Avenue on April 18th.

56.     A discharge occurred on or about July 20, 2007, when both pumps at a pumping station within the POTW failed, but the alarm did not sound and the pumps were not promptly reset.  These failures resulted in an unpermitted discharge through a manhole onto a public roadway.

57.     The failure of the Defendant to maintain its facility in good working order is a violation of Section B.1.d. of the Permit.

58.     Bristol failed to adequately disinfect the POTW on several occasions, including but not limited to on December 12, 2005, August 16, 2007, and September 7, 2007.

59.     On several occasions, Bristol failed to properly maintain the POTW, including but not limited to:

                  A. The failure of the thermometer in sample collection, which resulted in sampling errors and was discovered in March 2005;

12

B. The failure of the refrigerator for the effluent composite sampler, which resulted in sampling errors and was discovered in February 2006;

C. The failure of valves to the clarifiers, which was discovered in July 2006; and

D. The failure of valves to the digesters, which was discovered in autumn 2007.

60.     Bristol has also violated its Permit by failing to prepare or follow a central schedule and/or plan for maintenance, which has led at various times to shortages of necessary spare parts, sludge being removed later than it should have been removed, parts being purchased but never installed, and uncleaned parts of the POTW.

61.     Bristol has also violated its Permit repeatedly through failure to maintain its monitoring and alarm systems, leading to a chronic inability to accurately measure sewage flow, water pH, influent and effluent volumes, and other essential aspects of POTW operation.

62.     Bristol has also repeatedly collected and processed wastewater in volumes in excess of its hydraulic rated capacity, even during dry conditions.

63.     During wet weather conditions, such as in April and June 2007, Bristol has repeatedly collected and processed wastewater in volumes that exceed its hydraulic rated capacity.

64.     Bristol has failed to adequately plan or budget for upgrades in its POTW system sufficient to justify an allowance for a greater hydraulic rated capacity.

65.     Each failure to comply with an operation and maintenance provision in its Permit constitutes a separate violation of the Permit.

66.     Sections 309(b) and (d) of the Clean Water Act, 33 U.S.C. §§ 1319, provide that any person who violates any of the terms or conditions of an NPDES permit issued pursuant to Section 402 of the Clean Water Act, 33 U.S.C. § 1342, shall be subject to injunctive relief and a civil penalty.  The statutory maximum civil penalty amounts that may be awarded per day for each violation are set forth in Paragraphs 24 and 25 above.

67.     Each Permit violation also violates the Clean Streams Law, subjecting Bristol to civil penalties and/or injunctive relief.

68.     Unless enjoined by the Court, Bristol will continue to violate its Permit.

## STATE LAW CLAIMS

### CLAIM THREE
### (NPDES DMR Violations)

69.     Paragraphs 1 through 68 are re-alleged and incorporated by reference.

70.     The DMRs submitted by Bristol for the reporting periods of January of 2006 through June of 2010 reflect continuous and consistent exceedances of the effluent limits in the Permit.

71.     The discharge of sewage into waters of the Commonwealth, as described herein, was not authorized by permit or regulation and constitutes a violation of Sections 201 and 202 of the Clean Streams Law, 35 P.S. §§ 691.201 and 691.202.

72.     The discharge of sewage into waters of the Commonwealth, as described herein, resulted in pollution and thereby constitutes a violation of Section 401 of the Clean Streams Law, 35 P.S. § 691.401.

14

73.     Bristol will continue to violate its Permit, and will therefore continue to violate Sections 201, 202 and 401 of the Clean Streams Law, 35 P.S. §§ 691.201, 691.202 and 691.401, in this manner unless enjoined by the Court.

74.     The violations described in the preceding paragraphs constitute unlawful conduct pursuant to Section 611of the Clean Streams Law, 35 P.S. § 691.611, and subject Bristol to a claim for civil penalties under Section 605 of the Clean Streams Law, 35 P.S. § 691.605.

75.     Pursuant to Section 605 of the Clean Streams Law, 35 P.S. § 691.605, Bristol is liable for civil penalties of up to $10,000 per day for such violations.

## CLAIM FOUR
### *(Operation & Maintenance Violations)*

76.     Paragraphs 1 through 75 are re-alleged and incorporated by reference.

77.     Routine inspections performed by the Department for the period from September of 2005 to the present revealed that numerous treatment units and control processes at the Plant were not being maintained in good working order, nor were they being operated as efficiently as possible.

78.      Bristol's failure to properly maintain and operate treatment units and control processes at the Plant, as described in the preceding paragraph, constitutes a violation of 25 Pa. Code § 92.51(4).

79.     Bristol will continue to violate 25 Pa. Code § 92.51(4) in this manner unless enjoined by the Court.

80.     The violations described in the preceding paragraphs constitute unlawful conduct pursuant to Section 611of the Clean Streams Law, 35 P.S. § 691.611, and subject

Bristol to a claim for civil penalties under Section 605 of the Clean Streams Law, 35 P.S. § 691.605.

81.     Pursuant to Section 605 of the Clean Streams Law, 35 P.S. § 691.605, Bristol is liable for civil penalties of up to $10,000 per day for such violations.

## CLAIM FIVE
### Sanitary Sewer Overflows (SSOs)

82.     Paragraphs 1 through 81 are re-alleged and incorporated by reference.

83.     For the period from January of 2006 through August of 2010, the sanitary sewer collection system owned and operated by Bristol overflowed on at least 12 separate occasions, which allowed for the discharge of sewage into waters of the Commonwealth.

84.     The discharge of sewage into waters of the Commonwealth, as described herein, was not authorized by permit or regulation and constitutes a violation of Sections 201 and 202 of the Clean Streams Law, 35 P.S. §§ 691.201 and 691.202.

85.     The discharge of sewage into waters of the Commonwealth, as described herein, resulted in pollution and thereby constitutes a violation of Section 401 of the Clean Streams Law, 35 P.S. § 691.401.

86.     Bristol will continue to violate Sections 201, 202 and 401 of the Clean Streams Law, 35 P.S. §§ 691.201, 691.202 and 691.401, in this manner unless enjoined by the Court.

87.     The violations described in the preceding paragraphs constitute unlawful conduct pursuant to Section 611of the Clean Streams Law, 35 P.S. § 691.611, and subject Bristol Township to a claim for civil penalties under Section 605 of the Clean Streams Law, 35 P.S. § 691.605.

16

88.     Pursuant to Section 605 of the Clean Streams Law, 35 P.S. § 691.605, Bristol is liable for civil penalties of up to $10,000 per day for such violations.

## **REQUEST FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that the Court enter judgment in their favor and against Bristol and:

A.     Permanently enjoin Bristol from discharging pollutants except as expressly authorized by the Clean Water Act, the Clean Streams Law, and the limitations and conditions of the Permit;

B.     Order Bristol to take all steps necessary to comply with the Clean Water Act, the Clean Streams Law and the regulations implementing that Law, and the limitations and conditions of the Permit;

C.     Assess civil penalties against Bristol for up to $27,500 per day through March 14, 2004, and up to $32,500 per day from March 15, 2004 through January 12, 2009, and up to $37,500 per day thereafter, for each violation of the Clean Water Act and/or the Permit;

D.     Assess civil penalties against Bristol for up to $10,000 per day for each violation of the Clean Streams Law and/or the Permit;

E.     Award the Plaintiffs their costs and fees of this action; and

17

F.     Grant such other and further relief as this Court may deem appropriate.

Respectfully submitted,

ZANE DAVID MEMEGER
United States Attorney

MARGARET L. HUTCHINSON
Chief, Civil Division

PAUL W. KAUFMAN
Assistant U.S. Attorney
United States Attorney's Office for the
   Eastern District of Pennsylvania
615 Chestnut Street, Suite 1250
Philadelphia, PA  19106-4476

Re:  DOJ No. 90-5-1-1-444402/2

Dated:   9 - 27 - 10

18

UNITED STATES DEPARTMENT OF
JUSTICE

W. BENJAMIN FISHEROW
Deputy Chief
Environmental Enforcement Section
Environment and Natural Resources
    Division
Ben Franklin Station
P.O. Box 7611
Washington, DC  20044-7611


Dated: _____9/17/10_____


NANCY FLICKINGER
Senior Attorney
Environmental Enforcement Section
Environment and Natural Resource Division
United States Department of Justice
Ben Franklin Station
P.O. Box 7611
Washington, DC  20044-7611


Dated: _____9/23/2010_____


19

PENNSYLVANIA DEPARTMENT OF
    ENVIRONMENTAL
    PROTECTION:


WILLIAM H. GELLES
Assistant Counsel
Pennsylvania Department of Environmental
    Protection
2 East Main Street
Norristown, PA 19401


Dated: SEPTEMBER 23, 2010

20